IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TRUIST BANK f/k/a Branch Banking and Trust Company, ) ) ) Plaintiff, ) ) v. ) ) SOUTHEASTERN DISASTER ) RELIEF SERVICES, LLC, *et al.*, ) ) Defendants. ) | CIVIL CASE NO. 3:24-cv-131-ECM [WO] |

**MEMORANDUM OPINION and ORDER**

On February 22, 2024, Plaintiff Truist Bank ("Truist"), f/k/a Branch Banking and Trust Company, brought suit against Defendants Southeastern Disaster Relief Services, LLC ("SDRS") and its members, Jason McDaniel and Kimberlee McDaniel (collectively, the "Defendants"). Truist issued a promissory note to SDRS and alleges that the Defendants breached the terms and conditions of that note by not paying it back. Truist seeks the recovery of outstanding debt.

**I. JURISDICTION AND VENUE**

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

**II. BACKGROUND**

On February 20, 2020, Truist issued a promissory note ("Note") in the amount of $500,000 to Defendant SDRS, a limited liability company of which Defendants Jason

McDaniel and Kimberlee McDaniel are members. (Doc. 1 at 4, para. 13).[1] As collateral for the Note, SDRS executed a security agreement ("Agreement") granting Truist a security interest in (1) a 2016 Bobcat TA 870, (2) a 2016 Bobcat T650, and (3) a 2016 Bobcat Mulching Head Fecon (collectively, the "Equipment"). (*Id.* at 3, para. 9). The Note's maturity date, May 22, 2022, passed without payment from the Defendants. (*Id.* at 4, para. 13). Accordingly, the Defendants defaulted on the Note. Truist subsequently filed this lawsuit to repossess the Equipment, pursuant to the Agreement. The Defendants answered the Complaint, admitting to all allegations contained therein. (*See generally* docs. 8–10).

Now pending before the Court is the parties' amended joint motion for entry of consent judgment. (Doc. 31). The proposed consent judgment (the "Proposal") contains both monetary and injunctive relief. As for the monetary relief, the parties ask this Court to enter a final judgment in favor of Truist on its claims against the Defendants "in the amount of $434,548.06[,] which is comprised of principal in the amount of $358,466.56, interest in the amount of $62,156.86, as [of] June 17, 2024, Govt Agency Fee in the amount of $176.00, and legal fees and costs of $13,748.64, plus post judgment interest." (*Id.* at 1). And as for the injunctive relief, the parties stipulate that Truist is entitled to immediate possession of the Equipment and request that the Court order the Defendants to "cooperate with [Truist] in surrendering possession of the [Equipment] and . . . make the [Equipment] immediately and peacefully available for repossession by [Truist] or its agents, upon [Truist's] request." (Doc. 31-1 at 3). Further, the parties agree that Truist "may obtain the

---

[1] References to page numbers are to those generated by the Court's CM/ECF electronic filing system.

services of a private investigator or other contractor, if necessary, for the purposes of locating and peacefully recovering" the Equipment. (*Id.*). Finally, the parties propose that "[i]n the event Defendants fail to comply with surrendering possession of the [Equipment], [Truist] shall file a properly supported application for the applicable writ to [be] entered by the clerk." (*Id.*).

### III.  LEGAL STANDARD

"District courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy."[2] *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1240 (11th Cir. 1997); *see also Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (similar).

### A.    The Constitution:  Article III Standing

"In this context, the primary constitutional constraint is Article III's limitation of the judicial power to cases and controversies, embodied in the requirement that litigants demonstrate standing to sue." *United States v. City of Tampa, Fla.*, 739 F. Supp. 3d 1055, 1061 (M.D. Fla. June 21, 2024)[3] (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)

---

[2] Public policy is primarily a consideration in cases involving government entities and civil rights laws. *See, e.g.*, *Stovall*, 117 F.3d at 1238.  This dispute involves neither.  The Court therefore pretermits discussion of this factor.

[3] Here, and elsewhere in this Opinion, the Court cites nonbinding authority.  While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

3

(parenthetical in original). "In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future,'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)), and that the risk of future harm is "imminent." *TransUnion*, 594 U.S. at 435. "A merely conjectural or hypothetical" threat of future injury cannot confer Article III standing. *Houston*, 733 F.3d at 1329 (citing *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). Consent of the parties notwithstanding, a district court cannot "enter [a] consent decree[] . . . that provide[s] relief that the district court lacks the power to grant." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1258 (11th Cir. 2023).

**B.     Federal Law**

Similarly, a consent judgment must comport with other areas of federal law, including the Federal Rules of Civil Procedure. Particularly relevant here is Rule 65(d), which says that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." FED. R. CIV. P. 65(d). The specificity requirements of Rule 65(d) are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid

the possible founding of a contempt citation[4] on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (citations omitted). "[S]kepticism of vague and overbroad injunctions embodies two ideas: (1) that '[a]n injunction should clearly let [a] defendant know what he is ordered to do or not to do,' and (2) that 'court order[s] should be phrased in terms of objective actions, not legal conclusions.'" *City of Tampa*, 739 F. Supp. 3d at 1066 (citing *SEC v. Goble*, 682 F.3d 948, 950 (11th Cir. 2012)).

**C.    Fair and Reasonable**

Finally, a district court must determine whether a proposed consent judgment's terms are fair and reasonable. *See Stovall*, 117 F.3d at 1240; *Howard v. McLucas*, 871 F.2d 1000, 1008 (11th Cir. 1989) (District courts are "required to examine the consent decree," and "ascertain whether it represent[s] a reasonable factual and legal determination based on the record."). "Even though [a consent judgment] is predicated on consent of the parties, [a district court] must not give it perfunctory approval." *Stovall*, 117 F.3d at 1242 (quoting *United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981) (en banc) (Rubin, J., concurring in the per curiam judgment)). The Court must find "that the proposal represents a reasonable factual and legal determination based on the facts of record, whether established by evidence, affidavit, or stipulation." *Id.* (quotations omitted).

---

[4] "To 'provide meaningful and unique relief to [a] plaintiff' who has secured an injunction, the order must be capable of being enforced by coercive contempt, which imposes a continuing sanction until the defendant relents." *City of Tampa*, 739 F. Supp. 3d at 1067 (citing *Chandler v. James*, 180 F.3d 1254, 1270–71 (11th Cir. 1999) (Tjoflat, J., specially concurring) (explaining that, generally, only an injunction enforceable by coercive contempt is an appropriate use of a federal district court's equitable authority) *vacated and remanded sub nom. on other grounds* in *Chandler v. Siegelman*, 530 U.S. 1256 (2000) (remanding for further consideration in the light of *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000))).

5

## IV.  DISCUSSION

On this record, the Court finds that the Proposal is deficient in several respects. First, the Court is not convinced that Truist has standing to seek the injunctive relief requested. Second, the Proposal's injunction is impermissibly vague to satisfy the requirements of Rule 65(d) or to be enforced by contempt. Finally, the Court cannot determine, on this record, whether the Proposal's terms are fair and reasonable.

**A.    Truist Lacks Article III Standing**

On this record, Truist lacks standing to seek the injunctive relief set forth in the Proposal. The injunctive relief here is sought to enforce the terms of the Agreement, which, although related, is separate from the Note on which the Defendants have defaulted. While the Defendants are in continuous violation of their obligations to pay back the Note, there is no indication in the record that the Defendants have failed or refused to comply with the Agreement. The Defendants admitted to Truist's allegations, i.e., that they failed to fulfill their obligations under the Note. (*See* docs. 8–10). But the record does not show that Truist has even tried to execute the Agreement, much less that the Defendants have unlawfully refused to comply with its terms. As to the repossession of the Equipment, then, the Court has found insufficient record evidence to indicate "a sufficient likelihood that [Truist] will be affected by the [Defendants'] allegedly unlawful conduct in the future." *See Wooden*,

247 F.3d at 1284.  Accordingly, on this record, the Court lacks the authority to enter the injunctive relief requested by the parties.[5]

## B.     The Proposed Injunction is Impermissibly Vague

The overall message of the proposed injunction is clear:  the Defendants must allow Truist to take possession of the Equipment.  But the Court is concerned that specific provisions of the Proposal are too vague and would be difficult to enforce via contempt. *See City of Tampa*, 739 F. Supp. 3d at 1067 ("The need for [injunctions to be clear] is more than theoretical—if a defendant refuses to comply with an injunction, contempt proceedings that will test an order's clarity tend to follow.").  For example, the parties propose that the Court order the Defendants "to cooperate with [Truist] in surrendering possession" of the Equipment.  What does "cooperate" mean in this context? What specific actions does cooperation require of the Defendants?  Further, the Proposal requires the Defendants to make the Equipment "immediately and peacefully available for repossession" by Truist or its agents.  What specifically does making the Equipment "available" require the Defendants to do?  And what does it require of them to do so "peacefully?" The Defendants must make the Equipment available "immediately."  But how long are they subject to the injunction?  Until Truist or its agents make arrangements to repossess the property, whenever they choose to do so?  Finally, the Proposal asks the Court to order that Truist "may obtain the services of a private investigator or other

---

[5] The parties agree that the Defendants failed to pay back the Note as required by its terms.  Truist has standing to seek relief remedying that past harm and has done so via the proposed monetary judgment. (*See* doc. 31-1 at 2).

7

contractor, if necessary, for the purposes of locating and peacefully recovering the [Equipment] unto Plaintiff's possession." That is not a directive, much less one to the Defendants whose conduct would be regulated by the proposed injunction.

At bottom, the Court cannot enter an injunction that does not satisfy Rule 65(d)'s requirements and cannot be enforced by contempt. The Court finds the Proposal fails on both fronts.

### C. Fair and Reasonable?

The Court cannot determine, on this record, whether the terms of the proposed judgment are fair and reasonable. While the Court has before it the contracts at the foundation of this dispute, these documents do not speak to the reasonableness of the amount of interest, legal fees, or costs to be assessed as a part of the Proposal.

### V. CONCLUSION

The parties must assure the Court that their Proposal is "not unconstitutional, unlawful, unreasonable, or contrary to public policy." *Stovall*, 117 F.3d at 1240. Because they have not done so, and for good cause, it is

ORDERED that the motion for consent judgment (doc. 31) is DENIED without prejudice.

DONE this 13th day of February, 2025.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE